# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Respondent,

          v.

CAROLYN RICHARDSON,

          Appellant.

)
)
)
)
)
)
)
)
)
)
)

No. 71146-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 12, 2015

APPELWICK, J. — Richardson appeals her conviction for felony hit and run. She argues that the jury was improperly instructed on an uncharged alternative means of committing the crime. She argues that there was insufficient evidence to conclude that she knew she was in an accident. In a statement of additional grounds she argues that she received ineffective assistance of counsel. We affirm.

## FACTS

On November 1, 2012, at roughly 7:20 a.m., T.A., a 12 year old girl, was riding her bicycle to school. T.A. was wearing a bright red hoodie, blue jeans, and a bright red backpack that was stuffed with books. T.A. was not wearing any reflective gear nor did any of her clothing have reflective material on it. It was early in the morning and was "between light and dark." But, it was light enough to see without a flashlight. The surrounding streetlights were on. It was cloudy and rainy.

T.A. was biking south on the sidewalk of Central Avenue North in Kent. As T.A. approached a point where a side street exits a park and enters Central Avenue, a truck was attempting to turn onto Central from the side street and was blocking her path across the sidewalk. T.A. stopped on the sidewalk before reaching the side street to wait for the truck to make the turn. After the truck cleared the sidewalk, T.A. started pedaling again,

arrived at the part of the side street where cars exit the park, looked both ways, and proceeded through the intersection.

As T.A. was pedaling through the intersection, she saw another car approaching the intersection. T.A. saw the car stop for a few seconds before reaching the sidewalk. T.A. could see the driver enough to tell that she was a woman. Before making the right turn onto Central, the driver looked only left, to the south on Central—the driver was not looking north at T.A. The driver then continued driving toward the sidewalk in order to make a right turn to the north on Central. The driver of the car hit T.A.

As the car drove away, T.A. and her bike were pulled underneath the car. T.A. felt the tire of the car run over her hips and her hand. When the car was running her over, T.A. screamed "stop" multiple times. Upon impact, the car rolled T.A. causing her to be faced down on the street. As the driver continued to drive, the car dragged T.A. and T.A. subsequently felt the second tire drive over her lower back. T.A. was left lying in the street as the driver continued north on Central.

David Nuon and Julie Binh were driving north on Central that morning. Nuon saw the car merging into traffic off of the side street. Nuon saw someone moving underneath the car. Nuon saw T.A. get dragged into the intersection as the car completed its merge into traffic. Nuon said the car looked like it was driving over a speed bump as it hit T.A. After T.A. was out from underneath the car, the driver briefly applied the brakes but then continued driving north on Central. Nuon and Binh stopped to assist T.A. Binh stayed with T.A., and Nuon followed the car in order to get its license plate number. While Binh was tending to T.A., another driver called 911.

When Nuon followed the car, he was driving roughly 40 or 45 miles per hour. Nuon did not honk or flash his lights at the driver. Nuon caught up with the car in roughly three to four minutes. He successfully obtained the license plate number and returned to the scene of the accident. At that point the police had already arrived, and Nuon gave the license plate number to Officer Robert Kellams.

Officer Kellams retrieved the bicycle from the scene of the accident. The bike's handlebars were turned clockwise, there was damage to the rear tire and the wheel, the shaft was broken, one of the pedals was missing, and there were scuffs on the gearshifts, control cables, and the seat.

Officer Kellams then obtained the registered owner information for the car from the Department of Licensing. Officer Kellams went to the address associated with the car. The registered owner of the car was not at home, but a family member advised Officer Kellams that her grandmother, Carolyn Richardson, had recently left to teach a fitness class at the YMCA driving the car involved in the accident. Officer Kellams contacted the registered owner of the car, James Ellis, Richardson's husband, and informed him of the accident. Officer Kellams traveled to the YMCA, but Richardson was not there. Ellis had called Richardson and informed her that the police had contacted him about an accident. Richardson became upset and left the YMCA. After speaking with Ellis, Richardson called the Kent Police Department and informed them that she would be coming in.

Upon her arrival at the police station Richardson was not under arrest, but voluntarily answered questions and cooperated with all requests. Richardson claimed that she was at the intersection in question and made the turn in question, but did not know that she had hit T.A. Richardson told the officers that she was at the intersection,

3

because she was running late to a fitness class that she teaches and cut through the park to avoid traffic. Richardson was upset at the thought that she had hit a person. She was very distraught when she learned that T.A. had been injured. Richardson told the officers that she thought she had hit a muffler, a hubcap, or some other road debris. Richardson told the officers that after she believed she hit road debris, she looked in the rearview mirror and did not see anything, looked behind her and did not see anything so she continued driving. Richardson was listening to the radio at the time of the accident.

While at the police station, Officer Donovan Dexheimer performed a drug influence evaluation on Richardson. Richardson voluntarily engaged in the evaluation and performed all tests adequately. Officer Kellams photographed Richardson's car, including the undercarriage. The car had a mark at the bottom corner and a dent and a crack on the front bumper. The car had numerous scrapes underneath it and a black mark that looked like it was caused by a tire. There was also damage to the muffler. Officer Kellams believed it was fresh damage. Richardson then gave a taped statement about the events of that morning.

T.A. was taken to Harborview Medical Center for treatment after the accident. T.A. sustained three fractures of her pelvis and several fractures to her hands. T.A had tire marks on her lower back.

Richardson was charged with felony hit and run, RCW 46.52.020(1),(4)(a), or (b). A jury found Richardson guilty as charged. Richardson was sentenced to 45 days in King County Work/Education Release, six months of community custody, and 240 hours of community service within six months. Richardson appeals.

4

DISCUSSION

Richardson argues that her conviction must be reversed, because the jury was instructed on an uncharged alternative means of committing the crime of hit and run. Richardson also contends that reversal is required, because there was insufficient evidence to conclude that she knew she was involved in an accident. She also makes a statement of additional grounds and contends that she received ineffective assistance of counsel.[1]

## I. Uncharged Alternative Means

Richardson argues that the jury was improperly instructed on an uncharged alternative means of committing the crime of hit and run. She highlights the discrepancies between the information charging her with hit and run and jury instruction six. Jury instruction six says:

> A person commits the crime of hit and run when he or she is the driver of a vehicle and is knowingly involved in an accident resulting in injury to any person and fails to carry out his or her obligation to fulfill all of the following duties:
>
> (1) Immediately stop the vehicle at the scene of the accident or as close thereto as possible;
>
> (2) Immediately return to and remain at the scene of the accident until all duties are fulfilled;

---

[1] Richardson asserts two additional grounds. However, her first additional ground makes an insufficiency of the evidence argument—the same argument her counsel made in the second assignment of error in Richardson's opening brief. Richardson repeats her counsel's argument. As such, we will address Richardson's first statement of additional grounds as an assignment of error instead of a pro se statement of additional grounds. See RAP 10.10(a) (a pro se statement of additional grounds is appropriate when the defendant believes a matter has not been adequately addressed by the brief filed by the defendant's counsel).

(3) Give his or her name, address, insurance company, insurance policy number, and vehicle license number, and exhibit her driver's license, to any person struck or injured or the driver or any occupant of, or any person attending, any vehicle collided with; or if none of the persons specified are in condition to receive the information and no police officer is present, immediately report the accident to the nearest office of the police, give her name, address, insurance company, insurance policy number, and vehicle license number, and exhibit his or her driver's license, after fulfilling all other obligations insofar as possible on her part to be performed; and

(4) Render to any person injured in the accident reasonable assistance, including the carrying or making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his or her behalf.

(Emphasis added.) Richardson claims the underlined portion of the instruction is an alternative means of committing the crime of hit and run that was missing from her charging document.

The State contends that Richardson may not assert this argument on appeal, because she herself proposed the challenged jury instruction. Under the invited error doctrine, a party may not request an instruction and later complain on appeal that the requested instruction was given. State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990). Richardson proposed the jury instruction she now challenges on appeal. This instruction became jury instruction six at trial. We decline to review Richardson's claim.

Even if we were to reach the merits of Richardson's claim, her argument fails because hit and run is not an alternative means crime. An alternative means crime sets forth "distinct acts that amount to the same crime." State v. Peterson, 168 Wn.2d 763, 770, 230 P.3d 588 (2010). The legislature has not statutorily defined which crimes are alternative means crimes and it is left to judicial determination. Id. at 769. Theft is an example of an alternative means crime, because it may be committed by (1) wrongfully

obtaining or exerting control over another's property or (2) obtaining control over another's property through color or aid of deception. State v. Linehan, 147 Wn.2d 638, 644-45, 647, 56 P.3d 542 (2002). In each alternative means of committing theft, the defendant's conduct varies significantly. Peterson, 168 Wn. 2d at 770.

In contrast, the failure to register as a sex offender is not an alternative means crime. Id. In Peterson the defendant argued that the failure to register statute is an alternative means crime, because the crime can be committed by failing to register as a sex offender after (1) becoming homeless, (2) moving between residences in one county, or (3) moving between counties. Id. at 769-70. The court held that the statute did not create an alternative means crime, because an individual's conduct in each of the three scenarios did not vary significantly. Id. at 770. The statute prohibited the single act of moving without providing the proper notice. Id.

Similarly, the relevant portion of the hit and run statute contemplates a single act—the failure to provide identification to the other party after an accident has taken place. RCW 46.52.020(3). A driver can provide the identification via different methods—directly to the party at the scene of the accident or, if the party is not in a condition to receive the identification, then the driver may provide the information at the nearest police station. Id.

Richardson argues that her charging document was insufficient, because it did not provide the alternative duty to report to the police station in the event the driver cannot provide identification to the other party at the scene of the accident. But, the failure to provide the required information at the scene of an accident or at the closest police station is one single act—failing to provide the requisite identification. That there are different methods available to a driver of presenting identification after an accident does not make

7

hit and run an alternative means crime. Therefore, the trial court did not instruct the jury on an alternative means of committing the crime that was not included in Richardson's charging document. This was not instructional error.

II. Sufficiency of the Evidence

Richardson argues that there was insufficient evidence at trial to conclude that she knew she was involved in an accident. Richardson argues the State was tasked with proving that she knew that she had been involved in an accident as opposed to hitting road debris as she contends.

RCW 46.52.020(1) provides:

> A driver of any vehicle <u>involved in an accident resulting in the injury to or death of any person or involving striking the body of a deceased person</u> shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he or she has fulfilled the requirements of subsection (3) of this section; every such stop shall be made without obstructing traffic more than is necessary.

(Emphasis added.) To convict a person of felony hit and run, the State must also prove beyond a reasonable doubt that the defendant knew she was involved in an accident. State v. Perebeynos, 121 Wn. App. 189, 192, 87 P.3d 1216 (2004).

> A person acts with knowledge when:
>
>     (i) he or she is aware of a fact, facts, or circumstance or result described by a statute defining an offense; or
>
>     (ii) he or she has information which would lead a reasonable man in the same situation to believe that facts exists which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

8

An appellate court reviews a challenge to the sufficiency of the evidence by determining whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Knowledge may be inferred from circumstantial evidence. Perebeynos, 121 Wn. App. at 196. If information is sufficient to cause a reasonable person in the same situation to believe that a fact exists, the trier of fact may infer that the defendant had knowledge. Id. An appellate court will defer to the trier of fact to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences. Id.

Richardson argues that the evidence taken in a light most favorable to the State does not support the conclusion that Richardson knew that she had been involved in an accident. Richardson supports this assertion by arguing that it was dark and raining, that T.A. was not wearing reflective clothing, and that T.A. looked both ways before turning and did not see Richardson coming. Richardson also asserts that she looked back after feeling a bump and did not see anything. However, there is conflicting evidence in the record that supports the opposite conclusion—that Richardson, or a reasonable person in the same situation, would have had knowledge of an accident.

First, witnesses testified that it was not as dark or raining as hard as Richardson claimed at the time of the accident. Richardson testified that it was dark, pouring down rain, and that she was using her windshield wipers on maximum speed. But, Julie Binh described it as "a little bit dark" and "sprinkling" at the time. David Nuon also described

9

sprinkling and said that it was cloudy out. T.A. testified that it was sprinkling just a little. T.A. testified that it was "between light and dark" and that it was light enough to see everything. Officer Kellams testified that by the time he arrived at the accident scene, he did not need a flashlight to see anything. In addition to bolstering the State's assertions that visibility was sufficient that morning, the conflicting testimony of these several witnesses likely undercut Richardson's credibility with the jury.

Moreover, in light of this testimony suggesting reasonable visibility on the day of the accident, a reasonable trier of fact could conclude that T.A. was readily visible despite her lack of reflective clothing. While it is true that T.A. was not wearing reflective clothing at the time of the accident, she was wearing a bright red hoodie and a bright red backpack stuffed with books.

Finally, T.A.'s experience, the damages to T.A.'s bike, and other testimony about the accident suggest that Richardson would have heard or felt more than a bump that a driver might attribute to a muffler, a pothole, or other road debris. T.A.'s bicycle was heavily damaged. Similarly, there was damage to Richardson's car that Officer Kellams implied was caused by the bike. Additionally, T.A. testified that she felt both tires run her over. Nuon testified that he saw Richardson's car bouncing as if it had driven over a speedbump.

There is sufficient evidence in the record for a jury to infer that a reasonable person under the same circumstances as Richardson would have known that she was involved in an accident. A rational trier of fact could have found that Richardson had the requisite knowledge to be convicted of a hit and run beyond a reasonable doubt.

10

III. Ineffective Assistance of Counsel

In her statement of additional grounds, Richardson argues that she received ineffective assistance of counsel. To prevail on a claim of ineffective assistance, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The first prong of the Strickland test requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). The second prong requires the defendant to show there is a reasonable probability that, but for counsel's conduct of errors, the results of the proceeding would have been different. Id. There is a strong presumption of effective assistance. In re Det. of Moore, 167 Wn. 2d 113, 122, 216 P.3d 1015 (2009). If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for a claim that the defendant did not receive effective assistance of counsel. State v. Lord, 117 Wn.2d 829, 883, 822 P.2d 177 (1991).

First, Richardson asserts that her attorney should have presented a different theory of the accident per their pretrial agreed strategy. She contends that their original strategy was to present the view of the accident that T.A. collided with only Richardson's back passenger tire and that is why Richardson did not see her and know about the accident. This court will not find ineffective assistance of counsel if the actions a defendant complains about go to the theory of the case. State v. Varga, 151 Wn.2d 179, 199, 86 P.3d 139 (2004). Further, it was reasonable for Richardson's counsel to stray from this theory, because evidence in the record directly contradicts it. T.A. testified that

11

she was run over by two tires. Other witnesses testified that T.A. was trapped underneath Richardson's car and dragged. It was reasonable for Richardson's counsel to be wary of the back tire theory because it is inconsistent with the other witness accounts. As counsel's actions go to the theory of the case, Richardson did not receive ineffective assistance of counsel.

Richardson claims that her attorney should have called the accident investigator from her insurance company to testify instead of the less experienced accident reconstructionist, Mark Chapman. Ordinarily, the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. State v. Maurice, 79 Wn. App. 544, 552, 903 P.2d 514 (1995).

Here, Richardson has provided no facts showing that her counsel should have selected the insurance investigator instead of the accident reconstructionist, that counsel had any reason to believe that Chapman was incompetent, or that Chapman's credentials were deficient. See In re Pers. Restraint of Davis, 152 Wn. 2d 647, 733, 101 P.3d 1, 47 (2004) (counsel's expert witness selection not deficient when counsel had no reason to believe the experts were incompetent or that credentials of the experts were deficient in any manner). That Chapman was "less experienced" does not necessarily make him deficient. It was not unreasonable for Richardson's counsel to elect to choose an accident reconstructionist instead of an insurance investigator to testify as to what likely happened when Richardson hit T.A. Counsel's decision to use Chapman was a legitimate tactical decision.

12

Additionally, Richardson contends her attorney should have presented a picture of her steep driveway to account for the damage to the undercarriage of her car. Richardson wanted this evidence admitted to prove that the scrapes were not from the accident with T.A. Richardson's counsel cross-examined Officer Kellams about the scrapes on the bottom of Richardson's car during trial. Officer Kellams admitted that he had never seen the undercarriage of the car before the accident and that many of the marks were from before the incident. As such, a picture of Richardson's driveway would have been cumulative to make the point that the undercarriage of the car had prior damage. See State v. Peyton, 29 Wn. App. 701, 718, 630 P.2d 1362 (1981) (reasoning no ineffective assistance when testimony would have been cumulative). Presenting a picture of the driveway could have afforded the State the opportunity to argue that some of the scrapes were definitively not from the driveway and were instead from the accident. Richardson fails to show that counsel's decision not to present the photo was not a legitimate trial tactic.

Similarly, Richardson contends that her attorney should have called the previous owner of her vehicle or her husband as witnesses to testify to the fact that there was existing damage to her vehicle. The officer testified that many of the marks on the undercarriage were from before the accident, potentially making their testimony unnecessary. And, there is no suggestion that they had knowledge allowing them to contradict the testimony that some of the damage to the bottom of the vehicle was "fresh" and that one of the marks was a tire mark. It was reasonable for Richardson's attorney to decide not to present contradictory witness testimony that might have undercut

13

Richardson's credibility, particularly when the vehicle damage was not completely determinative as to whether Richardson knew she was involved in an accident.

Richardson's counsel objected when a witness insinuated that Richardson was aware she had hit T.A. Counsel objected based on speculation when Nuon said that Richardson was panicking as she was driving away from the scene of the accident. However, Richardson argues that her attorney did not adequately challenge several of the prosecutor's witnesses when they contended Richardson was aware an accident took place. This assertion lacks the required specificity for our review. See RAP 10.10(c) ("[T]he appellate court is not obligated to search the record in support of claims made in a defendant/appellant's statement of additional grounds for review."); State v. O'Connor, 155 Wn. App. 282, 29394, 229 P.3d 880 (2010) (declining to review statement of additional grounds where appellant did not explain the underlying facts for his claims).

Finally, Richardson claims that her attorney making references to her as a "hurried poor driver" and references to her as being "guilty" of not knowing about the accident in closing argument undermined her. We are unable to find "several" references in the record of this nature. At one point, defense counsel argues that just because Richardson was negligent does not make her guilty of a crime. Insofar as a statement like this forms the basis for Richardson's challenge, it was a legitimate trial strategy for defense counsel to highlight for the jurors that they could find Richardson's actions careless and reprehensible and yet still find her innocent of the crime of hit and run. Richardson fails to show that counsel's closing arguments were not a legitimate trial tactic.

The trial court did not err in presenting instruction six to the jury.  There was sufficient evidence to conclude that Richardson knew she was involved in an accident. Richardson has not demonstrated that she received ineffective assistance of counsel.

We affirm.

WE CONCUR: